IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

**Elizabeth Amber Wadkins**                                                                 **Plaintiff**

v.                                      No. 4:14-CV–74-DPM-JTK

**Carolyn W. Colvin, Acting Commissioner,**
**Social Security Administration**                                                        **Defendant**

### Recommended Disposition

#### Instructions

The following recommended disposition was prepared for U.S. District Judge D.P. Marshall.  A party to this dispute may file written objections to this recommendation.  An objection must be specific and state the factual and/or legal basis for the objection.  An objection to a factual finding must identify the finding and the evidence supporting the objection.  Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1]  The objecting party must serve the opposing party with a copy of an objection.  Failing to object within 14 days waives the right to appeal questions of fact.[2]  If no objections are filed, Judge Marshall may adopt the recommended disposition without independently reviewing all of the record evidence.

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

**Reasoning for Recommended Disposition**

Elizabeth Amber Wadkins seeks judicial review of the denial of her third application for social security disability benefits.³ Wadkins last worked as a hair stylist. She lost her job when snow prevented her from going to work.⁴ She claims she has been disabled since was terminated. She based disability on diabetes, a herniated disc, chest pain, depression, and migraine headaches.⁵

**The Commissioner's decision**. After considering the application, the ALJ determined Wadkins has severe impairments — degenerative disc disease of the lumbar spine post-surgery, insulin-dependent diabetes mellitus, non-cardiac chest pain, and cervical strain⁶ — but she can do some sedentary work.⁷ Because a vocational

---

³SSA record at pp. 149 & 153 (applying on Apr. 12, 2010 and alleging disability beginning Jan. 10, 2010) & p. 168 (showing she applied on June 29, 2006 and alleged disability beginning Jan. 1, 2005, and applied again on Mar. 18, 2010 and alleged disability on Jan. 1, 2010).

⁴*Id*. at pp. 42, 150, 192-93, 202 & 492.

⁵*Id*. at p. 191.

⁶*Id*. at p. 16.

⁷*Id*. at p. 18 (placing the following requirements on sedentary work: (1) occasional ramp/stair climbing, balancing, stooping, kneeling, crouching, or crawling, (2) no climbing ladders/ropes/scaffolds, (3) no overhead reaching, and (4) no concentrated exposure to hazards).

expert identified available sedentary work,[8] the ALJ determined Wadkins is not disabled and denied the application.[9]

After the Appeals Council denied review,[10] the ALJ's decision became the Commissioner's final decision for the purpose of judicial review.[11] Wadkins filed this case to challenge the decision.[12] In reviewing the decision, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[13] This recommendation explains why substantial evidence supports the decision and why the ALJ made no reversible legal error.

---

[8]*Id*. at p. 71 (identifying charge account clerk, addressing clerk, production and assembly workers like lampshade assembler, compact assembler, shoe buckler and lacer as available work).

[9]*Id*. at p. 24.

[10]*Id*. at p. 1.

[11]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[12]Docket entry # 1.

[13]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

**Wadkins's allegations**.  Wadkins contends the ALJ should have identified depression and anxiety as severe impairments.  She complains about the ALJ's consideration of medical opinion evidence.  She says the ALJ should have discussed the mental examiner's report.  She challenges the evaluation of her credibility.  She claims the ALJ relied on invalid reasons for discounting her credibility.  She contends a conflict exists between the vocational evidence and the Dictionary of Occupational Titles (DOT), because the jobs the vocational expert identified involve reaching.  For these reasons, she asks for the award of benefits or a remand.[14]

**No evidence suggests a severe mental impairment**.  Wadkins's complaint about depression and anxiety implicates step two of the disability-determination process.  Step two requires the claimant to show she has a severe impairment.[15]  If the claimant fails to prove a severe impairment, the process stops; the claim is denied.[16]  If the claimant meets her burden, the claim proceeds to the next step.  If the claimant proceeds to the next step, there can be no reversible error where the record shows the ALJ considered all of the medical evidence and all of the claimant's impairments.

---

[14]Docket entry # 14.

[15]20 C.F.R. §§ 404.1520, 416.920.

[16]*Bowen v. Yuckert*, 482 U.S. 137, 156-57 (1987) (O'Connor, J., concurring) (explaining that the Social Security Act authorizes the Commissioner to weed out applications from claimants who cannot possibly meet the statutory definition of disability at step two of the disability-determination process).

Wadkins met her step-two burden; her claim proceeded to the next step. The record shows the ALJ considered all of the medical evidence and all of Wadkins's impairments, to include depression and anxiety. Sixty-one lines of the challenged decision reflect the ALJ's consideration.[17] The ALJ summarized the medical evidence about mental impairment — including the mental examiner's report — applied the special technique for evaluating mental impairment,[18] and explained why Wadkins's symptoms have a minimal degree on her ability to work.

Wadkins complains about ALJ's conclusion — that her depression and anxiety are not severe — but the evidence shows few mental symptoms. The mental examiner reported adequate social skills, average intelligence, adequate attention and concentration, good persistence, and average processing speed.[19] According to Wadkins's primary care physician, Wadkins had no depression, anxiety, or agitation.[20] Agency mental health experts opined that Wadkins has no severe mental impairment.[21]

---

[17] SSA record at pp. 16-18.

[18] *See* 20 C.F.R. §§ 404.1520a & 416.920a.

[19] SSA record at pp. 494-95.

[20] *Id.* at p. 606 ("Mood and affect: no depression, anxiety, or agitation, despite her mother's recent death last week").

[21] *Id.* at pp. 508 & 616.

**The ALJ provided valid reasons for discounting Wadkins's credibility**. A reviewing court must "defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so."[22] "The ALJ may discredit a claimant based on inconsistencies in the evidence."[23] The ALJ identified inconsistencies undermining Wadkins's credibility: (1) Wadkins stated that she was able to work to receive unemployment compensation, but stated she was unable to work to receive social security disability benefits; (2) Wadkins claims she has been disabled since she lost her job, but she lost her job because weather prevented her from working; (3) Wadkins cared for her young daughter and elderly mother when she claims to have been disabled; (4) Wadkins alleged disabling symptoms, but did not comply with treatment recommendations, and (5) medical findings reflect no disabling symptoms.[24]

---

[22]*Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010) (citation omitted).

[23]*Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011).

[24]SSA record at pp. 15-16 & 19-22. *See Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005) ("A failure to follow a recommended course of treatment also weighs against a claimant's credibility."); *O'Donnell v. Barnhart*, 318 F.3d 811, 817-18 (8th Cir. 2003) ("[A]n ALJ may discount a claimant's allegations if there is evidence that a claimant was a malinger or was exaggerating symptoms for financial gain."); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (testimony that claimant lived by herself, drove in her car, shopped for groceries, and did her housework with some help from a neighbor was substantial evidence supporting ALJ's credibility evaluation); *Jernigan v. Sullivan*, 948 F.2d 1070, 1074 (8th Cir. 1991) ("A claimant may admit an ability to work by applying for unemployment compensation benefits because such an applicant must hold himself out as available, willing and able to work."); 20 C.F.R. §§ 404.1508 & 416.908 ("A physical or mental impairment must be established by medical evidence consisting of

The ALJ explicitly discredited Wadkins's testimony and provided good reasons for doing so. The ALJ did not err in evaluating credibility.

**The vocational evidence reflects no reversible error**. Wadkins contends the ALJ failed to resolve a conflict between the vocational evidence and the DOT. According to Wadkins, a conflict exists because the ALJ excluded overhead reaching and the vocational expert identified jobs requiring reaching. Wadkins didn't identify her authority, but she may rely on a DOT companion publication.[25]

An ALJ's error failure to resolve a conflict is harmless if no conflict exists.[26] A conflict can't exist in this case because no basis exists for excluding overhead reaching. The ALJ's decision and the evidence implicate only one basis for excluding overhead reaching: a remote incidence of cervical strain.

Wadkins strained her neck on September 19, 2008, while assembling a chair.[27]

---

signs, symptoms, and laboratory findings, not only by your statement of symptoms.").

[25]The DOT doesn't identify reaching requirements for the identified jobs, but a companion publication — Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles — lists reaching among other job requirements.

[26]See Renfrow v. Astrue, 496 F.3d 918, 921 (8th Cir. 2007).

[27]SSA record at pp. 358 & 590 (reporting that she fell and hurt her neck while assembling a chair).

Her doctor diagnosed cervical strain.[28] Diagnostic imaging of the neck was negative.[29] Wadkins underwent physical therapy. The injury resolved by December 2008[30] — more than one year before Wadkins claims she became disabled.

There is no evidence of a neck problem during the time period for which benefits were denied. If Wadkins had a residual problem, the problem did not prevent her from working as a hair stylist.[31] The ALJ's actual error was identifying cervical strain as a severe impairment, because no evidence shows a severe neck problem during the time period for benefits were denied. As a result, no basis exists for excluding overhead reaching. Without a basis for excluding overhead reaching, Wadkins's argument lacks an evidentiary basis. An argument lacking an evidentiary basis provides no basis for relief, because no harm results.[32]

---

[28]*Id*. at p. 358.

[29]*Id*. at p. 592.

[30]*Id*. at p. 368 (reporting on Nov. 18, 2008 that her neck felt much better; she's been going to physical therapy).

[31]*Id*. at p. 400 (Dec 31, 2008: "She has returned to work and is not having any problems working.").

[32]*Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) ("ALJ's error in failing to ask the vocational expert about possible conflicts between his testimony and the Dictionary of Occupational Titles was harmless, since no such conflict appears to exist."); *England v. Astrue*, 490 F.3d 1017, 1024 (8th Cir. 2007) (applying harm analysis to step five; hypothetical understating claimant's limitations was harmless error because vocational expert testified that claimant could perform jobs in the economy even with the additional limitations proposed by claimant's attorney); *Hensley v. Barnhart*, 352 F.3d

**Substantial evidence supports the decision**. Substantial evidence exists if a reasonable person would accept the evidence as adequate to show Wadkins can do some sedentary work.[33] Sedentary work involves mostly sitting.[34] A reasonable mind would accept the evidence as adequate to show Wadkins can do some sedentary work for the following reasons: (1) Wadkins's diabetes can be controlled with treatment and compliance; an impairment that can be controlled with treatment is not disabling. (2) Wadkins's chest pain flowed from gastroesophageal reflux disease; she hasn't complained about chest pain since her cardiologist prescribed heartburn medication.[35] (3) Wadkins underwent back surgery for a herniated disc;[36] post-op diagnostic imaging

---

353, 357 (8th Cir. 2003) (applying harmless error analysis to step five; even if ALJ erred in determining that claimant is literate, any resulting error is harmless because claimant is not disabled under either implicated Medical-Vocational Guideline Rule); *Dawson v. Bowen*, 815 F.2d 1222, 1227 (8th Cir. 1987) (applying harmless error analysis to step five; although ALJ shouldn't have applied the Medical-Vocational Guidelines because claimant cannot tolerate prolonged contact with raw rubber, but no harm occurred because substantial evidence shows claimant can do work in the national economy despite his adverse reaction to prolonged contact with raw rubber).

[33]*Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009); *Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990).

[34]SSR 96-9p, *Pol'y Interpretation Ruling Titles II & XVI: Determining Capability to Do Other Work--Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work*.

[35]SSA record at p. 475.

[36]*Id*. at p. 649.

shows no reason for disabling pain.[37] The orthopedic examiner found a diminished ability to forward bend and questioned whether Wadkins can stand long enough to work as a hairdresser,[38] but those limitations do not prevent sedentary work. (4) Wadkins's neck strain resolved before she claims she became disabled. (5) The vocational expert identified available sedentary work;[39] although the ALJ excluded overhead reaching when asking about available work, no basis exists for excluding overhead reaching.

## Conclusion and Recommended Disposition

Substantial evidence supports the ALJ's decision because a reasonable mind would accept the evidence as adequate to support the decision. The evidence indicates the ALJ under-estimated Wadkins's ability to work. Wadkins has no impairment preventing sedentary work. The ALJ made no reversible legal error. For these reasons, the undersigned magistrate judge recommends DENYING Wadkins's request for relief (docket entry # 2) and AFFIRMING the Commissioner's decision.

---

[37] *Id*. at pp. 704 & 868.

[38] *Id*. at p. 868.

[39] *Id*. at p. 71 (identifying charge account clerk, addressing clerk, production and assembly workers like lampshade assembler, compact assembler, shoe buckler and lacer as available work).

Dated this 29th day of June, 2015.

_____
United States Magistrate Judge